## MARTIN *et al.* v. ROBERTS.

*(Circuit Court, D. South Carolina.* September 15, 1888.)

1. PRINCIPAL AND AGENT—RIGHT OF AGENT TO COMPENSATION.

   The non-resident mortgagees of an island, valuable principally for its phosphate rock, employed defendant to look after the investment as their agent. He was at the time agent and manager for a firm which was the largest purchaser of phosphate in the market, and the assent of his employers was necessary to his acceptance of the agency, of which facts the mortgagees were informed. *Held,* that under the law of South Carolina the agent was entitled to compensation for his services, although there was no agreement to that effect.

2. SAME—AMOUNT OF COMPENSATION.

   The agent caused the mortgage to be foreclosed, employed a watchman to look after the property, occasionally visited it during a period of eight years, and frequently gave advice and information in regard to this and other investments of the mortgagees. He expected to be remunerated in part for his services from the management of the property or from its sale, but the mortgagees terminated the agency without fault on his part, thus destroying these expectations. *Held* that, under all the circumstances, the agent was entitled to $2,000 compensation.

3. SAME—CONSTRUCTION OF CONTRACT—CONFLICT OF LAWS.

   A contract of agency, to be performed in South Carolina, in which state the agency was accepted, is governed by the law of that state.

In Equity.

*Mitchell & Smith,* for complainants.

*Inglesby & Miller* and *Smythe & Lee,* for defendants.

SIMONTON, J.. The questions in this case yet to be decided are: Is the defendant entitled to compensation at the hands of the complainants? If so, what should be the amount of such compensation? The complainants, bankers in London, of established reputation and credit, owned certain bonds of the Willimans Island Phosphate Company, secured by a first mortgage on Willimans island, in this state. Feeling some apprehension with regard to this investment, and as to the solvency of the company, to which they had made advances, they sought a representative in South Carolina, who could ascertain and look after their interests. To that end they consulted Brown Bros. & Co., the well-known bankers, and on their recommendation they sought the services of David Roberts, the defendant. Mr. Roberts consented to act for them, provided that this met the approval of, and did not conflict with the interests of, Wylie Teacher & Co., for whom Mr. Roberts was manager and agent in this country. The result was the engagement of Mr. Roberts, and his acceptance of the agency. The whole matter was arranged by letter. Mr. Roberts began at once to realize the interest of Martin & Co. in their bonds. He caused a suit for foreclosure to be entered by able counsel. The suit, after some necessary delay, was carried to a successful issue. The mortgage was foreclosed, a sale had, and Willimans island and the property thereon were purchased by Roberts, in the name of and for Martin & Co. Thenceforward he took charge of the property for them, and continued in charge until he was relieved by Capt. Gardyne, who had been sent out from England by complainants to examine the property, and who was subsequently constituted by them its sole manager. Roberts' period of service was from December, 1875, to September, 1883. The property thus secured to Martin & Co. by Roberts consisted of Willimans island, and certain valuable machinery thereon, adapted to the manipulation of phosphate rock, with some other articles of less value. The island proper is an undeveloped territory, containing, or supposed to contain, phosphate rock. To the island is appurtenant the bed of a navigable stream (Bull river) to low-water mark, which had been mined to a considerable extent before Martin & Co. purchased. On the island was a small forest, of pine and palmetto trees, principally. The agency of defendant was for the most part as custodian of this property, protecting the phosphate territory from intrusion, taking care of the machinery, and keeping it in order. To these ends he employed a watchman, and occasionally, at rare intervals, visited the island, which was at a remote distance from his home in Charleston. The expenses attending this were paid principally by wood cut from the island under instructions of the defendant, and sold by him. Besides these duties, the defendant looked after a claim of Martin & Co. against Spofford & Tileston, of New York, in which—through no fault of his, however—he was not successful. During his agency he carried on a correspondence with complainants, frequent in its earlier stages, containing all the information he had with regard to the origin, progress, and result of the foreclosure suit in South Carolina, and the steps taken by him in New York. It its later stages it was less frequent, relating to the condition of the property, its possible value, containing

advice as to certain other investments concerning which Martin & Co. made inquiries. Mr. Roberts is a merchant in active business, the sole manager and agent of the firm, the largest purchaser of phosphate in this market; a man of ability and energy. Nothing whatever is said in the whole correspondence, nothing was ever said in any interview between him and Martin & Co., on the subject of compensation. When the agency ended, he made up his account current, in which he showed a balance to the credit of the Martins of some $200. In this he made no mention of any commissions or charges for services of any kind. As this was simply an account current of moneys received and paid out, and as Roberts did not look for compensation to his commissions upon receipts and disbursements, no force is attached to this omission. This account was duly vouched. Six months afterwards this bill was filed. Ostensibly it was for an account of his actings and doings as agent; really it was an action for damages against him for misfeasance and malfeasance in the conduct of his agency, a gross and willful betrayal of his trust, with damages laid down at $100,000. Roberts, in his defense, set up the claim for compensation. There being no express contract for payment of compensation, can the defendant recover it? The answer to this question must be found in the law of South Carolina. The acceptance of the agency by Roberts was in South Carolina. The performance of the contract of agency was to be made in South Carolina. The contract is governed by the law of South Carolina. *Scudder* v. *Bank*, 91 U. S. 411. The leading case in South Carolina is *Ravenel* v. *Pinckney's Assignee*, quoted in *Muckenfuss* v. *Heath*, 1 Hill, Eq. 182; *Poag* v. *Poag*, 1 Hill, Eq. 285, again quoted and affirmed in *Lever* v. *Lever*, 2 Hill, Eq. 160. The complainants rest on that case, contending that in this state a private agent is not entitled to any compensation in his agency unless he makes it a part of his contract. This case is not reported, and the facts on which it was decided do not appear. *Muckenfuss* v. *Heath*, in which it is quoted, distinguishes itself from the leading case, and says that it does not apply to its facts. *Poag* v. *Poag* accepts it. *Lever* v. *Lever* properly goes off on another ground. There the supposed trustee was not held responsible for interest. This was sufficient compensation. The present case rests on this case of *Ravenel* v. *Pinckney's Assignee*. What is the full force and effect of that decision? These are all the words of it quoted:

"The act of assembly of 1745, allowing commissions to executors, administrators, guardians, trustees, etc., embraces only that species of agents or trustees therein specifically mentioned, or such as are under the authority of the law and the control of the courts. Factors, commission merchants, commercial agents, and assignees are entitled to commissions from the usage of trade. But the private agent or assignee of an individual is not entitled to any such claim unless he makes it a part of his contract." *Muckenfuss* v. *Heath*, 1 Hill, Eq. 183.

The doctrine here stated, taken broadly, does not commend itself. It certainly cannot apply to every private agent, in the sense that he can get no compensation, if it be not expressed in his contract, for in *Scott* v. *Baldwicke*, 2 Const. (S. C.) 410, an overseer recovered on an entire contract the

*quantum meruit.* One can easily understand how a person who voluntarily undertakes to settle or compromise the debts of a friend with money furnished to him for that purpose cannot deduct the commissions of an assignee without a stipulation to that effect. But it shocks the sense of justice to deny compensation to a stranger who performs services—a series of services—for another, in no way connected with him by the ties of blood, friendship, or obligation, especially when in the performance of his duties he has been held to the rigorous responsibility of a trustee. Distasteful as the doctrine may be, we must apply it, if it reaches this case. Martin & Co. are bankers, engaged in the most important and most liberal department of commerce. In the course of their business they negotiated for the services of Mr. Roberts, a merchant, at the time, to their knowledge, acting as agent and manager of a large commercial house, and of course under their pay. They wanted him to do for them like services, so much alike that the assent of Roberts' principals was a *sine qua non* to his employment by Martin. In the transactions of commerce time is money. In business there is no place for sentiment. No services are gratuitous, not expressly declared so. "In the ordinary course of commercial agencies a compensation is always understood to belong to the agent, in consideration of the duties and responsibilities which he assumes, and the labor and services which he performs." Story, Ag. § 326; Bish. Cont. § 219, and cases quoted; Id. § 220, and cases quoted; 3 Add. Cont. § 1401. In the case of *Ravenel* v. *Pinckney's Assignee,* "factors, commission merchants, commercial agents, and assignees are held entitled to compensation from the usages of trade;" that is to say, by immemorial usage it is distinctly understood that all persons engaged in commerce, called upon to do services in the due course of business, are *ex necessitate* entitled to compensation, as growing out of, and inseparably connected with, the contract of their employment. I am of the opinion that the defendant is entitled to compensation for his services, and that this was in contemplation of both parties in the creation and progress of the agency. He cannot be deprived of this, unless it be shown by the testimony that he has released, waived, or surrendered it for a consideration. This does not appear.

What that compensation would be, is the next and most difficult question. There can be no doubt that, when the correspondence between Martin & Co. and Roberts began, and during its progress, the latter counted upon great ulterior results apart from and outside of his present service, to be derived by him from his confidential connection with a banking-house of repute. In his letter, 3d May, 1880, Roberts says to Martin & Co.: "As yet I have been little more than a custodian of your property, and you have had no opportunity of judging me in any other capacity." This suit has defeated this expectation, and for this disappointment there can be no compensation. The reward of his care and services, however, was to come also in part from the management of the property for them, or from its sale, or from some disposition of it. Certainly not from its bare custody; else the consent of Wylie Teacher & Co. was not needed, and would not have been asked. This precludes

any idea of an annual salary. When Martin & Co. terminated the agency of Roberts, they destroyed any hope of compensation from the management of the property as phosphate territory, or from its sale, or from some other disposition of it. This disappointment can be measured in money. By the former decree in this cause it appears that the agency was terminated without such fault on Roberts' part as to justify the action against him, or such as to deprive him of reasonable reward for services rendered. As we have seen, there is no room for the charge of an annual salary, or for anything like clerkly compensation. Roberts was the agent of a foreign principal, with large powers, employed because of his experience and ability in managing similar interests. He was not employed to do clerical work, or to devote a certain measure of his time; but he was to exercise his judgment. The testimony taken before the special master does not apply to the case, and does not produce the impression desired. His services must be valued as a whole, and the compensation awarded should be in the nature of indemnity, rather than full compensation. Considering all the circumstances of the case, he should be paid $2,000. It is so ordered. Let a decretal order be prepared carrying the result of this opinion into effect; each party to pay his own costs, all other costs to be divided between them.

NOTE. Since this opinion was prepared, Mr. H. A. M. Smith has kindly furnished the full text of the opinion in *Ravenel* v. *Pinckney's Assignee.* The only point decided in that case is that, under the act of assembly of 1745, commissions as compensations are allowed only to the classes of agents mentioned specifically in that act, and that no private agent can reserve commissions *eo nomine,* unless they be specially contracted for. "But," adds the judge, deciding for the court, "I have no doubt that such an agent is entitled to reasonable compensation for his trouble." It thus appears that the leading case in no way conflicts with the conclusion reached in this case. See MS. decrees, Columbia, 28th March, 1828.