## FARLEY *v.* HILL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

No. 56. Argued October 30, 31, November 1, 1893. —Decided December 11, 1893.

Passing by the question whether a receiver appointed by a court pending proceedings to foreclose a railroad mortgage is precluded from buying bonds on the market or from agreeing to unite with others in bidding at the sale, and the question whether the contract set up in this case is within the statute of frauds of the State of Minnesota, and the question whether, even if the contract was illegal and not enforceable in a court of equity, an account might not be compelled, the court holds that the plaintiff has failed in proving his case.

In EQUITY. Decree dismissing the bill, from which complainant appealed. The evidence was voluminous, but the court seems to have stated in its opinion everything that is necessary to be stated in order to understand it. The case was before this court at October term, 1886, as stated in the opinion, under the title *Farley* v. *Kittson,* reported in 120 U. S. at p. 303. Since then Mr. Kittson has died, and the St. Paul Trust Company, the executor of his will, was substituted as defendant in his place. The facts, as stated by the court, with its opinion, were as follows:

On December 15, 1881, Jesse P. Farley filed in the Circuit Court of the United States for the District of Minnesota a bill of complaint against Norman W. Kittson, James J. Hill, and the St. Paul, Minneapolis and Manitoba Railway Company.

The object of the bill was to enforce the complainant's alleged right to share with Kittson and Hill in the proceeds of certain foreclosure proceedings against the St. Paul and Pacific Railroad Company and the first division of the St. Paul and Pacific Railroad Company, and wherein the St. Paul, Minneapolis and Manitoba Railway Company, a corporation organized by Kittson and Hill, in connection with other persons, had become the owners of the foreclosed properties.

To this bill the St. Paul, Minneapolis and Manitoba Railway Company demurred for want of equity, and Kittson and Hill filed a plea denying some of the allegations of the bill, and alleging that Farley, as receiver and manager, under appointment by a court, was precluded by reason of public policy from making any valid agreement with Kittson and Hill of the kind set up in the bill.

To this plea a replication was filed, and proofs were taken. The Circuit Court held that the agreement of the plaintiff with Kittson and Hill was unlawful and void, and on that ground sustained the plea and dismissed the bill. 4 McCrary, 138.

On appeal to the Supreme Court the decree of the Circuit Court was reversed, and the case was remanded with directions to overrule the plea and to order the defendants to answer the bill. 120 U. S. 303, 318.

The case was proceeded in in the Circuit Court. The defendants answered, replication was filed, and evidence was taken, and a final decree was rendered dismissing the bill. From that decree this appeal was taken.

*Mr. Henry D. Bean* and *George F. Edmunds* for appellant. *Mr. Edward D. Cooke* was with them on the brief.

*Mr. George B. Young*, (with whom was *Mr. M. D. Grover* on the brief,) for appellees.

*Mr. John Maynard Harlan* for the St. Paul Trust Company, appellee.

Mr. Justice Shiras delivered the opinion of the court.

The bill sought to enforce an agreement whereby Farley, the plaintiff, and Kittson and Hill were to purchase, for their joint and equal benefit, bonds, secured by mortgages, of two railroad companies, of one of which Farley was receiver by appointment by the court, and of the other of which he was the general manager, by appointment of the trustees named in the mortgages.

The validity of. such an agreement was denied by the defendants, and they sought to raise that question at the threshold of the case by filing a plea, setting up the supposed incompetency of Farley to enter into such a contract, and the court below sustained the plea and dismissed the bill. In order, however, to escape from the effect of certain allegations in the bill, which averred knowledge on the part of the bondholders of Farley's connection in interest with Kittson and Hill, the defendants included in their plea a denial of such allegations, and this court was of opinion that the proper office of a plea to a bill in equity was not to traverse its allegations, like an answer, nor yet, like a demurrer, while admitting those allegations, to deny the equity of the bill, but to present some distinct fact, which of itself creates a bar to the suit, and thus to avoid the delay and expense of going into the evidence at large. This view resulted in a reversal of the decree of the Circuit Court sustaining the plea, and the cause was remanded with directions to overrule the plea, and to order the defendants to answer. *Farley* v. *Kittson*, 120 U. S. 318.

The result of the new trial below was that the Circuit Court dismissed the bill, and, as we learn from the opinion of that court, mainly upon two grounds, namely, that the plaintiff had failed to sustain the allegations of his bill by sufficient proof, and that the agreement relied on by the plaintiff, even if proven, was, in view of his official position, invalid.

Upon the second appearance of the cause in this court the proposition that was urged when it was here before is again pressed upon us, with great force of argument and illustration: That the position of Farley, as receiver and manager of the companies whose roads were embraced in the foreclosure proceedings, was such as to disable him from having an enforceable interest in a private agreement with parties intending to buy up the bonds of the companies and become purchasers of the railroads at the foreclosure sales.

Whether a receiver appointed by a court pending foreclosure proceedings is precluded from buying bonds on the market or from agreeing to unite with others in bidding at the sale is a question best decided on its own facts and when it shall be necessary to decide it. His position, no doubt, is a fiduciary one towards the creditors and stockholders of the company, and, in a proper case, disclosing fraud or unfairness, they could be heard to impugn any rights or interests he might acquire hostile to theirs. Nor do we wish to be understood as saying that facts might not be made to appear, in a given case, showing such dereliction of duty and such abuse of his position by a receiver as to justify a court of equity in declining to afford him a remedy even against those who had participated with him in unlawful schemes.

It has also been contended in this court that the contract set up in the bill was ineffective, because within the statute of frauds of the State of Minnesota, which declares that every contract for the sale of lands, or any interest therein, shall be void, unless the contract, or some note or memorandum thereof expressing the consideration, is in writing and subscribed by the party by whom the sale is made, or by his authorized agent; it appearing that the main object of the contract alleged was, through a purchase of the bonds of the railroad companies, to finally become the purchasers of the railroads on the foreclosure sale, such railroads and appurtenances being claimed to be lands within the meaning of said statute.

When, however, we come to a consideration of the case, as it appears in the pleadings and evidence, we find no difficulty in concurring with the view of the learned judge below, that the

plaintiff failed in proving his case, and we are thus relieved from determining whether the defendants could escape from responding to their contract by setting up its invalidity on the grounds of public policy; whether, even if the contract was illegal and not enforceable in a court of equity, an account might not be compelled within the doctrine of the case of *Brooks* v. *Martin*, 2 Wall. 70, and whether such a contract would be within the statute of frauds of the State of Minnesota.

The evidence upon which the court below acted in finding that the plaintiff had failed to maintain his allegation that a contract had been entered into with Kittson and Hill comprises nearly two thousand pages, and it largely turns upon the testimony of Farley and of Fisher, his clerk, on behalf of the plaintiff, and of Hill, one of the defendants, on the part of the defence. Kittson, the other defendant, died before his testimony could be taken, although he had employed counsel to defend the case.

It is argued that, as it thus appears that the question of fact as to the existence of such a contract is *in equilibrio* as between Farley and Hill, the testimony of Fisher, Farley's clerk, but who is not a party, should turn the scale; and this might be just reasoning if the question in issue had to be determined upon the testimony of those three witnesses. But, as is pointed out in the opinion of the court below, there is an inherent improbability in the plaintiff's story — not in the assertion that he had become interested with others in the ownership of bonds and in the proposed purchase of the railroads, for such agreements are not unusual, but by reason of the absence of any writing expressing the agreement. A man of affairs, as the plaintiff was, would not be likely, in a matter of such magnitude, to rely upon a merely verbal agreement, and; as the transactions occupied a considerable time, we would expect, if such a contract really existed, to find letters or memoranda relating to it; but such are not produced. On the contrary, the letters and conversations that we find in the record, though trifling and inconsequential in themselves, do not point to or imply any subsisting agreement between Farley and Kittson and Hill.

It is not necessary for us to say, or to think, that Farley and Fisher, in testifying as they did, perpetrated intentional falsehood. It is altogether possible that, from desultory conversations with Kittson and Hill, and from an exaggerated sense of his own importance in the matters in hand, Farley was led to believe that he was entitled to participate in the venture.

But a court cannot act upon such uncertain conjectures. A contract of the kind, asserted by the plaintiff must be established to the entire satisfaction of a court of equity before its intervention can be demanded.

The utmost effect that can be given to the plaintiff's evidence is that he had reason to expect that he would be included as a party in the project of buying bonds and bidding at the sale of the railroads. But it is clear, from his own evidence, that he was not included in the actual transaction. He furnished no part of the moneys used, and is not shown to have contributed any special or peculiar information important to the syndicate. His bill, therefore, is filed for an account of a partnership or enterprise in which he really did not participate. His remedy, if he is entitled to any, would seem to be an action at law for damages, though it is difficult to see that there was any consideration proceeding from him, either in money contributed or in personal services of any kind, out of which a legal obligation could arise, or which could furnish a measure of damages.

Our conclusion is that the court below was right in dismissing the bill, and its decree is accordingly

*Affirmed.*