HUMEL v. HOOGENDORN.

(Second Division. Nome. January 3, 1914.)

No. 2388.

1. JUDGES ⬬11, 26—OFFICERS DE FACTO.

The district judge of the Second division of Alaska was removed by the President, to take effect on November 1, 1913, and his successor was appointed and commissioned to take office that day; the successor did not arrive at Nome until November 3d, when he took his oath of office and entered upon his duties; the removed judge continued to act as such until the 3d, when his successor took the oath of office; on motion of defendant to vacate findings and judgment entered by the acting judge on and after November 1st, and before his successor arrived and took the oath of office. *Held*, no legal evidence in the record as to when the judge's removal became effective, his removal by the President was within executive authority, and his acts as de facto judge pending the arrival of his successor were valid.

2. JUDGES ⬬26—JUDGMENT—COLLATERAL ATTACK.

Where a judge of a district court of Alaska, who has been formally removed by the President and his successor appointed, was acting as de facto judge of the court between the time of the order of his removal and the taking of the oath of office by his successor, his judicial acts as such de facto officer cannot be collaterally attacked.

⬬See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. PRINCIPAL AND AGENT ⬤�longdash81(1)—COMPENSATION.

> An agent is entitled to recover compensation for his services rendered the principal even though the purpose for which he was employed fails, provided it does not fail because of his fault, and there is no agreement conditioned on its success.

4. NEW TRIAL.⬤�longdash70—GROUNDS FOR.

> Where the only evidence to support the judgment for the plaintiff was her opinion as to the value of her service as agent in conducting the sale of the principal's property, and she was not shown to have had any previous experience in such matters, *held*, a new trial was granted.

This case is before me on numerous motions of the defendant to vacate findings of fact and conclusions of law of my predecessor and to set aside the verdict and judgment by him and to grant a new trial therein.

G. J. Lomen, of Nome, and G. D. Schofield, of Seattle, Wash., for plaintiff.

T. M. Reed, of Nome, for defendant.

TUCKER, District Judge. It is contended by defendant that Judge Murane was legally removed from the office of judge of this court, that his removal was to take effect on November 1, 1913, and that, therefore, all acts done by him on and after that date were illegal; on the other hand, it is contended by the plaintiff that Judge Murane acted as de facto judge of this court on November 1 and on a part of November 3, 1913, and up to the time of the qualification of his successor, and Judge Murane's ejection from office on that day, as appears in the record, and that any act done by him cannot be collaterally attacked.

The commission of appointment for Judge Murane's successor was effective November 1, 1913; but Judge Tucker, who was so commissioned, did not qualify as judge of the court until some time before noon on November 3d, not having arrived in Nome until the morning of that date.

As a new trial will be granted in the case on the grounds of excessive damages, it is unnecessary for the court to enter into a prolonged discussion of the following questions: (1) As to whether or not the removal of Judge Murane was legal; and (2) as to whether he was a de facto judge within the period of time above mentioned. I shall therefore briefly state only

---

⬤�longdashSee same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

my conclusions on these two questions, and the authorities relied on.

First: I find no legal evidence in the record as to the time when Judge Murane's removal was to become effective.

Second: That his removal by the President was legal I am satisfied from the following cases: McAllister v. United States, 141 U. S. 174, 11 Sup. Ct. 949, 35 L. Ed. 693; Reagan v. United States, 182 U. S. 419, 21 Sup. Ct. 842, 45 L. Ed. 1162; Shurtleff v. United States, 189 U. S. 311, 23 Sup. Ct. 535, 47 L. Ed. 828.

Third: Upon the question of whether Judge Murane was acting as de facto judge of this court when he gave judgment in this case, and whether the same may be collaterally attacked I am clearly of the opinion that he was acting as such, and that said judgment cannot be collaterally attacked.

The motion for new trial on these grounds is overruled. State v. Carroll, 38 Conn. 449, 9 Am. Rep. 409; Hamlin v. Kassafer, 15 Or. 457, 15 Pac. 778, 3 Am. St. Rep. 176.

Upon the motion for a new trial on the ground that the evidence is insufficient to sustain any verdict or judgment for plaintiff, I am of the opinion that she is entitled to a reasonable compensation for services rendered, such compensation to be ascertained upon the basis and in accordance with the views hereinafter set forth upon the question of excessive damages. The preponderance of evidence is clearly in the plaintiff's favor in this respect. Her direct and positive testimony as to her employment by the defendant and of her bringing the defendant and purchaser together, and the sale having been accomplished, is substantially corroborated and supported by the fact of her trip to California for the purpose of making the sale, and also by the testimony of both the defendant and purchaser; neither of them deny, but substantially admit that the plaintiff had an interview with the purchaser concerning the sale of the Inmachuk property, and it is conceded that the sale was made. The most that may be said of the evidence of Hoogendorn and Johnson in denial of plaintiff's contention is that she had nothing to do with the actual completion of the sale, of its terms, and the final acts of the seller and buyer. All this may be true, but still it ought not and cannot legally deprive plaintiff of the right to recover whatever compensation her services may be fairly and reasonably worth, provided the sale was consummated by reason of her instrumentality, and

this, I think, is clearly shown by the evidence. Generally speaking, the authorities hold that a broker or agent is entitled to recover for services rendered, even though the purpose for which he was employed fails, provided it does not fail because of his fault, and there is no agreement conditioned on its success. A fortiori should he be allowed to recover when the purpose of his employment is accomplished by him in a reasonable time after his employment, although he may not have been present, or have participated in the actual completion of the contract of employment. For these reasons the motion for new trial because of the insufficiency of the evidence to sustain the judgment is overruled. Stanton v. Embry, 93 U. S. 548–557, 23 L. Ed. 983; Forsyth v. Doolittle, 120 U. S. 74 et seq., 7 Sup. Ct. 408, 30 L. Ed. 586; Tiffany on Agency, 442, 443; Martin v. Roberts (C. C.) 36 Fed. 217; Scully v. Williamson, 26 Okl. 19, 108 Pac. 395, 27 L. R. A. 1089, Ann. Cas. 1912A, 1265, and cases cited below with reference.

Upon the motion for new trial because the judgment is excessive, I am of opinion that this cause is sufficiently stated in the motion.

In Forsyth v. Doolittle, supra, the Supreme Court said:

"The compensation to be made in such cases is, by the ordinary judgment of business men, measured by the results obtained. It is not limited by the time occupied or the labor bestowed."

From this statement, taken with the remarks of the court immediately preceding, and the authorities I have been able to read, it may be said that compensation in such cases is based on the tact and skill of the agent employed, on the time occupied and the labor bestowed by him in performing his contract, as well as the results obtained. In this case, however, the financial gain accruing to the defendant by reason of his stock negotiations and transactions should not be considered in arriving at the compensation of the plaintiff; those matters were only incidental to, and not the direct result of, the real contract between plaintiff and defendant. The plaintiff's testimony itself does not show that she was employed to do more than sell the Inmachuk property as a whole, and she does not pretend to have contracted to do, or to have done, more than this. She says more than once that she knew nothing of selling stock, and her testimony along those lines is confirmed

by all the circumstances of the case; she is always insistent for the defendant to go to the purchaser to sell the property as a whole. It was by this insistence that she brought the defendant and purchaser together, which resulted in the sale, thereby entitling her to a reasonable compensation. Any compensation, therefore, which is based on the results of the sale, should be confined to the purchase price of the Inmachuk property as a whole, so far as it may be ascertained, either by evidence of its value or what Johnson actually paid for it. If the plaintiff was employed or undertook to do more than find the purchaser Johnson, or to bring him and defendant together, as indicated above, she did so voluntarily, or at Johnson's suggestion, rather than at Hoogendorn's. From her evidence it is inconceivable that she should have been selected to finance and float a mining or stock proposition such as that which is detailed by the evidence. I am of opinion, therefore, that it was a mistake to base her compensation on such a supposition and the financial results therefrom.

I am also of the opinion that, with respect to the amount of compensation the plaintiff should be allowed, the court should have had before it evidence of the usage or custom of the particular business for which she was employed, at the place where she was employed; it may be, under the circumstances of this particular case, such evidence, to be admissible, could be obtained here or in California, although I am inclined to think it should be with reference to the usage or custom obtaining at the latter place. I cannot think that a plaintiff's mere opinion as to what compensation she or he should be allowed in any given case is sufficient to establish the amount of the compensation to be allowed; and beyond the expression of plaintiff's opinion in this case there is no evidence of the value of her services, and she is admittedly inexperienced in the matter for which she was employed. In Sample v. Rand, etc., 112 Iowa, 616, 84 N. W. 683, cited in Sackett on Instructions, vol. 1, p. 443, the court said:

"Thereunder, if the plaintiff did not show himself entitled to the usual commission for finding a purchaser, he was not entitled to anything."

In Tiffany on Agency, supra, it is said:

"The commissions of brokers, factors, auctioneers and other commercial agents are commonly regulated by the usage and custom of the particular business at the place where the agent is employed.

In such cases if it is to be inferred that the parties contract upon the basis of the custom and usage, the amount and conditions of remuneration will be determined thereby"—citing Story on Agency, § 326, and Stanton v. Embry, supra, and other cases.

See, also, Scully v. Williamson, 26 Okl. 19, 108 Pac. 395, 27 L. R. A. (N. S.) 1089, Ann. Cas. 1912A, 1265; also Am. & Eng. Enc. of Law, vol. 1, p. 1116:

"For the purpose of aiding in the determination of the value of the agent's services, it is proper to receive evidence of the usual price charged and received for similar services by others engaged in the same line of work in the same vicinity."

The same rule is laid down in 19 Cyc. pp. 235, 236, cited by defendant's counsel.

It is true that in none of these cases is the question discussed as to when the court should call for this evidence, if not offered; but in all of them it appears, or it may be reasonably inferred from the text of the opinion, that such evidence was offered and was the basis on which the verdict was founded. There may be cases in which the court has done what my respected predecessor did, accepted the evidence of the plaintiff as satisfactory, but I have not discovered them. While I have followed my predecessor in reaching the conclusion that the evidence of the plaintiff as to the fact of her employment and the further fact of her having brought the defendant and purchaser together, I am constrained to differ from him upon the question of the amount of the compensation to be allowed the plaintiff; her testimony, it seems to me, on that point is entirely worthless, based solely on her opinion, supported by no proof of her experience in such matters, and even though I had concurred in the view that she was entitled to be paid a per cent. on the whole profits realized from the stock and other transactions connected incidentally with the real contract of the parties, I could not have allowed the judgment to stand, which in my view of the case is out of all proportion to the services rendered and the results accomplished by the performance of the real contract as I conceive it to have been. For the foregoing reasons the motion for a new trial will be granted and an order directing the same be entered. In view of the granting of a new trial, I have not deemed it necessary to discuss the numerous questions raised and so ably argued, but have confined myself to a discussion of the three principal questions in the case.