PATTY, JOINER & COMPANY v. CITY BANK OF SHERMAN ET AL.

Delivered February 20, 1897.

1. **Assignment for Benefit of Creditors—Right of Acceptance not Waived by Suit.**

One of the creditors of an insolvent who had made a general assignment with preferences was a bank whose debt was secured by a lien on exempt homestead property. After the assignment, the bank brought suit to enforce the lien, but dismissed its suit and accepted under the assignments before the end of the four months allowed for accepting by the statute. The alleged lien on the homestead was shown to be invalid. Held, that as against unpreferred creditors who had garnisheed the assignee before the bank acepted, the accceptance was sufficient to entitle the bank to its rights as a preferred creditor under the terms of the deed of assignment.

2. **Same—Partnership Creditors' Preference as to Firm Assets.**

One partner has no power to assign or mortgage the partnership assets to pay or secure his individual debts without the consent of his co-partners, and, where he assigns his own interest without their consent, the assignee takes it subject to the settlement of the firm debts.

3. **Same—Partnership Illegal, but Executed—Rule not Changed.**

Where the firm business is completed, the fact that the partnership agreement was illegal because against public policy, does not deprive a partner of his right to have the assets first applied to the partnership debts, nor give to general creditors of one partner a superior right over the firm creditors.

**4. Partnership Illegal—Stifling Competition.**

A partnership agreement to buy cotton, which is not made known to the public, and in the execution of which the partners are to apparently act as though in competition with each other, is against public policy and illegal; but after its completion, the law will not, because of its illegality, permit one of the partners to appropriate the entire assets of the firm, to the exclusion of its creditors.

**5. Assignment for Creditors—Harmless Error in Allowances.**

In a contest among creditors of an insolvent assignor, the allowance of interest and attorney fees to one of the preferred creditors, if erroneous, is not material error as to an unpreferred creditor for whom there would be nothing, even if such allowance were not made.

**6. Garnishment—Allowance of Attorney Fees and Costs.**

Where an assignee in insolvency is wrongfully garnisheed by non-preferred creditors, he is entitled to costs, including a reasonable allowance for his attorney fees.

APPEAL from Grayson. Tried below before Hon. DON. A. BLISS.

*E. F. Brown*, for appellants.—1. By the institution of suit to foreclose its lien, levy of the attachment, and keeping same on the docket after its acceptance, the City Bank elected not to accept under the assignment. The rights of plaintiffs under their writs of garnishment having attached prior to the acceptance of the City Bank, and during the pendency of its suit on the note, it cannot abandon the suit and accept under the assignment to their prejudice. Henderson v. Willis, 65 Texas, 700, 39 Texas, 308; Sanborn v. Norton, 59 Texas, 308; Lovenberg v. Bank, 67 Texas, 442; Covington v. Wells, 59 Texas, 49; McPherson v. Johnson, 69 Texas, 486; Summerhill v. Tanner, 72 Texas, 226; Bauman v. Jaffray, 26 S. W. Rep., 260; Leneave v. McDowell, 17 S. W. Rep., 1031; Terry v. Munger, 121 N. Y., 167.

2. Immediately after the execution of the assignment, defendant City Bank accepted the individual note of defendant Simpson in full payment of the indebtedness of Simpson & Fuller to it. If the cotton were partnership cotton, and the debt of the City Bank a partnership debt, the transfer to Simpson, and the settlement of the debt by the note of Simpson, relieved the cotton of any lien or charge which might have been against it for the payment of the partnership debts. Willis v. Thompson, 85 Texas, 311; Willis v. Heath, 18 S. W. Rep., 801.

*Wolfe & Hare*, for appellee, City Bank of Sherman.—1. The City Bank of Sherman having by its suit attacked neither the deed of assignment nor the trust estate, could not be held by the institution of said suit to have elected not to accept under the instrument, especially in view of the finding of the jury to the effect that such was not its intention. Burrill on Assignments, p. 762, sec. 476; Eppright v. Kauffman (Mo.), 1 S. W. Rep., 738; Jewett v. Woodward, 1 Edw. Ch. (6 N. Y. Ch., 195), p. 109; Yorkley v. Stimson, 1 S. E. Rep., 452.

2. The facts found by the jury in reference to the purchase of cotton by Simpson and Fuller did not constitute an illegal combination, was not contrary to public policy, and was not a "trust," and the evidence did not connect the City Bank with the purchase of said cotton. The

mere knowledge on the part of one who loans money that the borrower uses or intends using the same for some illegal purpose is not sufficient to establish the invalidity of the contract, but there must be some fact which would directly connect plaintiff with the illegal act. Simpson and Fuller being partners in the business of purchasing cotton, the assignee of Fuller had no right to the partnership assets, the evidence showing that such assets were insufficient to pay the indebtedness of said partnership. It not appearing from the findings that the City Bank had received any portion of the proceeds arising from the sale of cotton purchased by Simpson and Fuller, the court could not in any view of the case render judgment against the bank. Bishop v. Honey, 34 Texas, 249; Kottwitz v. Alexanders, 34 Texas, 705; Lewis v. Alexander, 51 Texas, 591; Labbe v. Corbett, 69 Texas, 506.

*Hazlewood & Smith,* for appellee, J. W. Simpson.—1. The court erred in holding that the partnership entered into between Simpson and Fuller was fraudulent and void as being in restraint of trade, for the reason that the facts found by the jury were insufficient to warrant such judgment; said finding by the court being wholly based on the facts as found by the jury under its instructions, as follows: That about October 20, 1893, Simpson and Fuller entered into a contract whereby they were each to contribute equally to the capital necessary for the business of purchasing cotton. That they were each to buy cotton in his own name and draw checks on the bank signed by them individually, and mark the same "cotton," so that they could be charged to their partnership account at said bank, and that such arrangement was entered into for the purpose of inducing farmers who might have cotton to sell to believe that they were competing against each other in the purchase of cotton. The finding as set forth in this assignment was made by the jury upon the peremptory instruction of the court. There is no other evidence in the record except this finding of the jury to indicate anything unlawful in the partnership of Simpson and Fuller, which is to the effect only that they kept secret the fact that they were partners. Dolph v. Troy Machine Co., 28 Fed. Rep., 553; Diamond Match Co. v. Roeber, 35 Huse, (N. Y.), 421; Cent. Roller Shade Co. v. Cushman, 9 East (Mass.) 560, 9 N. E. Rep., 629; 3 Am. & Eng. Ency., Law, 882 and notes; Lawson on Contracts, sec. 324 et seq.

2. As to whether the allegations, if true, in appellants' petition, entitle them to a personal judgment against Simpson, see LeGierse v. Kellum & Rotan, 66 Texas, 242.

As to whether appellants should have charged in their petition that the partnership was void, see Railway v. Arispe, 81 Texas, 517; Express Co. v. Darnell, 65 Texas, 639; Lewis v. Hatton, 86 Texas, 533; and as to whether appellants could disturb the final settlement made by Simpson & Fuller, even if the original contract of partnership was void, see DeLeon v. Trevino, 49 Texas, 88; Lawson on Contracts, sec. 387 et seq.

If the original agreement of partnership between Simpson and Fuller was unlawful by reason of some of its provisions as determined by the court, still the contract under which Simpson purchased the half interest of Fuller in the 150 bales of cotton was a new and independent contract, supported by a new and good consideration, and was valid. If the original agreement of partnership between Simpson and Fuller was invalid, as determined by the court, still appellants were not entitled to a judgment against Simpson for one-half the value of the 150 bales of cotton, because said partnership had been ended, its assets all paid out to partnership creditors under a valid contract, before the appellants in this suit brought in question the validity of the said partnership transactions.

The court erred in adjudging that the one-half interest or partnership interest of defendant Fuller in the 150 bales of cotton which was purchased by Simpson & Fuller, and which was on hand at the time when said Fuller made his assignment, passed to the assignee by virtue of the execution and delivery of the deed of assignment and the law, because the evidence showed that Fuller and Simpson were co-partners in said cotton; that said cotton comprised all the assets of the said copartnership; that said copartnership owed debts of greater amount than the value of said cotton, for which reason the partnership creditors of Simpson & Fuller had a prior right to satisfaction out of the cotton; and said Fuller could not, by his voluntary deed of assignment appropriate partnership assets of Simpson & Fuller to the payment of his individual indebtedness. Johnson v. Shoe Co., 5 Texas Civ. App., 398; Kendall Shoe Co. v. Johnson, 24 S. W. Rep., 533; Wiggins v. Blackshear, 86 Texas, 665; Mensing v. Atchison, 26 S. W. Rep., 509; Schneider v. Sansom, 62 Texas, 201.

*Beaty & Culver*, for appellee, J. R. McMahan.

LIGHTFOOT, Chief Justice.—On December 13, 1893, J. F. Fuller, a merchant at Howe, Texas, executed to J. R. McMahan a deed of assignment, conveying to him all of his property subject to forced sale, for the benefit of such of his creditors as would accept under it and release him. The assignee immediately accepted the trust, qualified according to law and took possession of the property. At the date of the assignment Fuller was insolvent. He was indebted to appellants, all of whom refused to accept under the assignment, and who brought suits upon their claims and recovered judgments against Fuller. They also sued out writs of garnishment which they caused to be served on J. R. McMahan, as assignee. The City Bank of Sherman held a claim against J. F. Fuller for $2500, which was secured in the deed of assignment, and was scheduled as a claim which had been previously secured by a lien upon a certain lot in the town of Howe, which the assignor claimed to be exempt under the laws of Texas.

At the time of the assignment, and previous thereto, J. F. Fuller was

in partnership with J. W. Simpson in the purchase of cotton at Howe, and said firm had on hand about 150 bales of cotton, and owed an amount of money equal to or in excess of the assets.

On the day of the assignment, and with the full knowledge of the assignee, J. R. McMahan, J. F. Fuller transferred to his partner J. W. Simpson all of his interest in the partnership cotton. Simpson immediately took charge of the cotton, sold it, and applied the proceeds to the payment of the firm debts.

In answer to the writ of garnishment which had been served upon him, J. R. McMahan, the garnishee, set up the deed of assignment, his qualification, that he had given notice as required by law, the names of the accepting creditors and the amounts of their claims, the expenses which he had incurred, showing the amount in his hands, which was not enough to pay the accepting creditors, if the claim of the City Bank of Sherman should be allowed. He answered specially with reference to that claim, that after the execution of the assignment, and with notice thereof, the City Bank of Sherman instituted suit in the District Court of Grayson County against J. F. Fuller and wife for the amount of its debt, and caused a writ of attachment to issue and be levied upon the town lot in Howe, which was exempt to Fuller and wife, and stated that such suit was still pending.

The answer of the garnishee was controverted by the appellants on the grounds: (1) that the assignee failed to account for one-half interest in 150 bales of cotton, claimed to be worth $3000, and which, it was claimed, Fuller had fraudulently transferred to J. W. Simpson to defraud his creditors, and that the garnishee knew of this conveyance, and failed to take any steps to recover the cotton; (2) that at the date of the acceptance of the City Bank of Sherman on its note for $2500, suit was pending on the same, and that a writ of attachment had been levied therein on a certain lot in the town of Howe, which suit was filed with full knowledge of all the facts; that the note was not due, and was secured by a lien on said lot, which was reasonably worth the amount of said debt.

On August 14, 1894, appellants, who were non-accepting creditors, filed a suit in the District Court of Grayson County to set aside the acceptance of the City Bank of Sherman, and to cancel the conveyance of the one-half interest in the 150 bales of cotton from Fuller to Simpson, and to recover the same or its value.

On February 20, 1896, the garnishment suit was consolidated with the cause last above mentioned; and in addition to the allegations formerly made, plaintiffs set out the amount of funds collected by the assignee, the amount of the debts of the accepting creditors, and attacked the claim of $2500 of the City Bank of Sherman upon the grounds mentioned, and prayed that the allowance of the claim of said City Bank be set aside; asked for judgment against J. F. Fuller, J. W. Simpson and the City Bank of Sherman, for the value of the cotton, to be brought into the assignment fund, and for judgment debarring the City

Bank from participating in the proceeds of the cotton, for judgment against the assignee and the sureties on his bond for the value of the cotton, and that the priorities of the garnishments be established, etc.

The defendant City Bank of Sherman, after general answer, set out that the note for $2500, for which it accepted, was unsecured; that the purported builder's lien executed by Fuller and wife on the lot was for money loaned to Fuller to erect a storehouse on the lot, and that it was executed after the building was completed; that it was known to be a part of the homestead of Fuller and wife, and the lien was worthless; that it gave notice in writing of its acceptance, after the assignment, within four months after publication by the assignee, and filed its claim within the time prescribed by law; that the suit instituted and the attachment therein levied was an effort to realize a portion of its indebtedness out of exempt property, and was not an attack upon the assignment; that on the day notice was given to the assignee of its acceptance, it ordered the clerk to dismiss the suit, and has not since attempted to force payment of the note or to recover judgment.

Defendant Simpson answered, setting up the partnership between himself and Fuller and the ownership by the firm of the 150 bales of cotton; that prior to the execution of the deed of assignment by Fuller, the firm of Simpson & Fuller was, by mutual consent, dissolved, and that he, Simpson, became the owner of the assets of the firm, which consisted wholly of said cotton; and that he, Simpson, assumed the payment of all the debts due by said firm of Simpson & Fuller; that he paid Fuller nothing on the cotton, but paid all of the proceeds of the cotton on debts of the firm of Simpson & Fuller, as defendant agreed to do when he took the bill of sale from Fuller for his one-half interest in the cotton; that he was ignorant of any intention on the part of Fuller, if such he had, to delay or hinder creditors in the collection of their debts; that the cotton was sold for the full amount of its value, and the proceeds paid out on the firm debts.

J. R. McMahan, assignee, answered setting out substantially the same answer that he made to the writ of garnishment; asked for $50 as attorney's fees for answering the writ of garnishment, and prayed for judgment against Simpson and the City Bank of Sherman for the value of the cotton, if fraudulently transferred.

The cause was submitted by the court to the jury on special issues, upon which the court rendered judgment holding that the one-half interest of J. F. Fuller in the 150 bales of cotton passed to the assignee; and judgment was rendered in favor of such assignee against J. W. Simpson for $3141.57, with interest at six per cent, and costs; that out of the $2156.75 already in the hands of the assignee, he pay (1) the expenses of the assignment, attorney's fees, costs of this suit, and then claims of creditors who have accepted under the assignment, if not enough to pay them in full, then in proportion to their claims—giving the amounts and names of the accepting creditors each; appellants' judgment and garnishments are established as claims prior to the claim of the

City Bank of Sherman in the sum of $3141.57,—the value of the cotton recovered against J. W. Simpson, and the City Bank is debarred from participation in the distribution of said last named sum. If anything remains due on the claims of accepting creditors under the assignment, after the funds now on hand shall be exhaused, such assignee shall pay the accepting creditors, excluding the City Bank of Sherman, in full out of the above $3141.57 recovered for said cotton. After such payments, then the judgments of plaintiffs shall be paid in full; if not sufficient to pay all in full, to be paid pro rata, giving to neither priority; that plaintiffs recover of J. W. Simpson, J. F. Fuller, City Bank of Sherman, J. R. McMahan, assignee and garnishee, all costs; that plaintiffs' take nothing in their suit against W. D. Fuller, J. R. Jackson, G. B. R. Smith, D. B. Harrel, G. T. Duke and B. H. Zauk, and that they recover their costs against plaintiffs; that the builder's lien on lot 19 in block 3 in the town of Howe is declared invalid, and J. F. Fuller and wife recover their cost against the City Bank of Sherman on their cross-action; that the acceptance of the City Bank and B. H. Zauk take precedence of the garnishment of plaintiffs in so far as the fund on hand is to be paid out, and in no other fund. All parties excepted in open court, gave notice of appeal, and the case is now before us on appeal.

On motion of the assignee, the judgment was reformed as to costs incurred in seeking to subject the cotton transferred to Simpson, and it was directed that such costs should be paid out of the funds on hand, and that McMahan, City Bank of Sherman and B. H. Zauk recover of plaintiffs their costs.

We have purposely left out a statement of the pleadings of such parties as are not involved on this appeal. For the convenience of all parties, we refer to the special verdict of the jury set out in full in the record for a fuller statement of the facts, and we find our conclusions upon such material facts as we consider necessary to decide the case under the several assignments of error hereafter presented.

1. Under the first, second, third and fourth assignments of error, the appellants attack the ruling of the court in giving the acceptance of the City Bank of Sherman, under the assignment, priority for its note of $2500, over the judgments and garnishments of plaintiffs in the fund in the assignee's hands—upon the grounds (1) that the bank did not attempt to accept under the assignment until after plaintiff's garnishments were served; (2) that the bank had elected to pursue its remedy by suit against the debtors, J. F. Fuller and wife, under a valid lien, and was barred by such election; (3) and that the court erred in its special charge to the jury upon that subject.

It was shown that J. F. Fuller executed the deed of assignment to J. R. McMahan, assignee, December 13, 1893, and that the claim of the bank for $2500 was provided for as a claim which had been secured by a lien on a certain business lot in the town of Howe, which was claimed in the assignment to be exempt as the business homestead. Notice was duly given by the assignee as required by law, and within less than

four months the bank filed its acceptance under the assignment. Before such acceptance, the plaintiffs had sued J. F. Fuller, and in that case had sued out a writ of garnishment, which had been duly served on the assignee. It was also shown that after the execution of the deed of assignment, the bank brought suit against Fuller and wife on its debt, and attached the lot in Howe, the business homestead of Fuller and wife. That suit was subsequently dismissed. At the time of the execution of the claimed lien in favor of the bank by Fuller and wife on the Howe lot, it was their homestead, and no lien was fixed thereon.

Under the statutes governing assignments for the benefit of creditors, each creditor is entitled to four months after notice of the assignment within which to accept under it. The assignee having accepted the trust, the garnishments of plaintiffs upon him would only hold such part of the fund as might remain after the payment of all claims of creditors accepting and authorized to accept such assignment within the time prescribed by law.

The attachment by the bank of the lot in Howe, which was exempt by law from the assignment, and which was scheduled therein as exempt property and so established on the trial, was not an attack upon the assignment, and could not of itself be considered an election by the bank not to take under the assignment. The jury found, as we think, on sufficient testimony, that there was no such election by the bank. The charge of the court fairly presented the issue to the jury, and the special charge asked was properly refused.

2. Under the fifth, sixth and ninth assignments by appellants, they claim that the court erred in refusing to enter judgment on the verdict in favor of plaintiffs against the assignee and the sureties on his bond for the value of one-half of the cotton purchased by Simpson & Fuller, with interest—and judgment against the City Bank of Sherman for the value of one-half of the cotton transferred by Fuller to Simpson.

The assignee by cross-assignment, also complains at the refusal of the court to render judgment against the bank for the value of one-half of the cotton of Simpson & Fuller.

In this connection, appellee J. W. Simpson complains by cross-assignments of error at the judgment of the court, in holding that the partnership between Simpson and Fuller for the purchase of cotton was against public policy and void, and for rendering judgment against J. W. Simpson for the value of one-half of the cotton.

At the time J. F. Fuller made the assignment for the benefit of his individual creditors, he was in partnership with J. W. Simpson in the purchase of cotton. At the time of the assignment of his individual assests, he transferred to his partner J. W. Simpson all of his interest in 150 bales of cotton owned by the firm, in order that the latter might pay the firm debts. The partnership was indebted to the City Bank of Sherman for money advanced to buy cotton. Simpson assumed this indebtedness, sold the cotton and paid the debt, and still lacked a small amount of liquidating it, which he supplied from his own means. It ·

· · was claimed by the creditors of Fuller that his half of the cotton passed by the assignment.

The principle is well settled that one partner of a firm has no power to assign or mortgage the partnership assets to pay or secure his individual debts without the consent of his partner. Johnson v. Shoe Co., 5 Texas Civ. App., 398; Wiggins v. Blackshear, 86 Texas, 665. He could assign his interest in the firm assets without the consent of his partner, but such assignment would work a dissolution of the partnership, and the assignee would take such interest subject to the settlement of the partnership debts. There being a partnership between Simpson and Fuller in the purchase of cotton, when the latter made the deed of assignment for the benefit of his individual creditors, even if he had included in such assignment, without Simpson's consent, all of his interest in the partnership cotton, it could not have carried anything except his interest in such surplus, if any, as might have remained after winding up the partnership business of the firm of Simpson & Fuller. There was not enough assets to pay the firm debts, so that, outside of the question of the transfer from Fuller to Simpson of his interest in the firm cotton, there was nothing for the assignee, in the cotton or its proceeds.

But it appears that Fuller made no attempt to include in his assignment any of the cotton owned by Simpson & Fuller. On the contrary, he transferred to his partner, with notice to the assignee, all of his interest in the cotton for the purpose of being used to liquidate the firm debts, and Simpson promptly used it in payment of the firm debts. In the absence of fraud, this transfer evidences the willingness of Fuller that the firm assets should be applied by his partner just as the law would have applied them; and the individual creditors of Fuller, even if he had desired them to do so, could not have appropriated such firm assets to the payment of their claims without Simpson's consent.

But, appellants claim that the above rules do not apply in this case, because the contract of partnership, as well as the contract by Simpson & Fuller with the bank, whereby the latter loaned the former money with which to buy cotton, were void as against public policy. This position is not taken by the parties in the pleadings, and there is no allegation upon which it is based; but upon the trial of the case, after the court had heard the testimony, it submitted to the jury a special issue upon the suject, and under their verdict found that the contract of partnership between Simpson and Fuller was void as against public policy; that the cotton purchased by each was his individual property, and although it could not be shown how much was puchased by each, yet, it was held that one-half the cotton was the individual property of Fuller, and passed under the assignment, and judgment was rendered against Simpson for the value of one-half the cotton.

The facts on which this finding was based were, in substance, as follows: About October 24, 1893, the partnership was formed by which they were to deal in cotton at Howe; each partner was to furnish an

equal amount of capital, and they were to share equally the profits and losses; each partner was to buy cotton, giving his individual check for the amount of the purchase, the check to be marked "cotton," and such checks were to be cashed by the bank and charged to the partnership account of Simpson & Fuller. The cotton was weighed and tagged separately. This was all done for the purpose of inducing farmers who might have cotton to sell to believe that the two partners were competing against each other in the purchase of cotton. Their arrangements were made at the bank whereby they provided a partnership fund which they exhausted in the purchase of cotton under the above agreement, and they incurred an additional indebtedness to the bank for cotton bought in the same way. At the time of Fuller's individual assignment, the firm of Simpson & Fuller owned 150 bales of cotton thus purchased, and owed about $300 more than their assets would pay when fairly applied to such debts. A partnership had been formed for the purpose of dealing in cotton at Howe. It cannot be doubted that the purpose was a lawful one. But if, in the agreement for conducting their business, the partners concealed from the public the fact that they were buying as such, and thereby induced people to believe that they were competing against each other for the purpose of preventing competition, a serious question might arise as to the validity of such dealing under our statutes and public policy, if this was a contest between the firm and some party with whom they had such dealings, or from whom they bought such cotton. But such is not the case. The transactions had been fully completed; the firm owned certain property and owed certain debts, and one of the partners desiring to make an assignment of his individual assets to pay his individual debts, transferred to his partner all of his interest in the firm assets for the purpose of allowing such partner to pay the firm debts, which appears to have been fairly done. Have such individual creditors a right to complain?

They contend, in effect, that the partnership having been formed to buy cotton by suppressing competition, it was void; that the assets acquired in the venture were owned by the partners individually, without reference to any debts which had accrued in the venture, and without reference to any settlement between the parties themselves, and that the interest of the failing partner in such assets passed to his creditors under his assignment, stripped of any debts of the concern or any claimed rights of such partners. This position cannot be maintained.

In the leading case of Brooks v. Martin, 2 Wall., 70, a partnership had been formed for the purpose of buying up soldiers' claims before any script or land warrant was issued, which was directly contrary to the statutes, and hence illegal. After the results of the contemplated operation had been completed, the partner in whose hands the profits were, refused to account to his partner, and a bill was filed in equity for an account and division of such profits. Justice Miller, in delivering the opinion of the court, reviewed the authorities, and held that though the contract was illegal and either party might have refused to carry it out,

or any soldier or party dealing with them in the purchase of such claims might have taken advantage of its illegality, yet, after the completion of their operations, the assets acquired were the property of the firm, and an account should be taken accordingly. The distinction between enforcing illegal contracts, or contracts void as against public policy, and asserting title to property or money which has arisen from them, is clearly and distinctly drawn. The above case is referred to with approval in recent decisions. Armstrong v. Bank, 133 U. S., 469; Farley v. Hill, 150 U. S., 576; Planters Bank v. Union Bank, 16 Wall, 500. See also Armstrong v. Toler, 11 Wheat., 587; McBlair v. Gibber, 17 How., 232; Sharp v. Taler, 2 Phillips Ch., 801; Bly v. Bank, 79 Penn. St., 453; Harvey v. Varner, 98 Mass., 123; Greenhood on Public Policy, 107, 108; Anson on Contracts, 186.

In the case of Planters Bank v. Union Bank, above, the court said: "The plaintiffs do not require the aid of any illegal transaction to establish their case. It is enough that the defendants have in hand a thing of value that belongs to them. Some of the authorities show that, though an illegal contract will not be executed, yet when it has been executed by the parties themselves, and the illegal object of it has been accomplished, the money or thing which was the price of it may be a legal consideration between the parties for a promise expressed or implied, and the court will not unravel the transaction to discover its origin." 16 Wall., 500.

The doctrine above announced has been fully adopted by our own Supreme Court; and the leading case of Brooks v. Martin, 2 Wall., 70, cited and quoted with approval. See Pfeuffer v. Maltby, 54 Texas, 461; Wagner v. Biering, 65 Texas, 511; Lobbe v. Corbett, 69 Texas, 503; Lewis v. Alexander, 51 Texas, 697; DeLeon v. Trevino, 49 Texas, 92.

In the last named case, Judge Moore said: "But if a contract is illegal, certainly it does not follow that it is illegal or immoral for the parties after its completion, to fairly settle and adjust the profits and losses which have resulted from it."

In the case of Lewis v. Alexander, above, which was a suit to settle a partnership business growing out of an illegal traffic, the court held that the knowledge on the part of a lender of money that the money loaned might be used in an illegal enterprise, would not, of itself, without other act in aid or in furtherance thereof, defeat the right of such lender to recover. It was also held that a partner who obtained more of the proceeds of the illegal venture than his share, must account to his co-partner. 51 Texas, 579.

In this case, if the original purpose of the partnership betwen Simpson and Fuller was contrary to public policy, still, the assets acquired by them than were the property of the concern, and when Fuller transferred to Simpson all of his interest in the assets, so that the latter might use them in the payment of the firm debts, such transfer was based upon a legal consideration which was not tainted by any vice in

the original purchase of the property, and the transaction should be upheld. If the cotton on hand and owned by the partnership was the proceeds of an illegal venture, it is difficult for us to see by what process of reasoning it can be maintained that the individual creditors of one of the partners would have a prior right to satisfaction out of such assets over the creditors of the partnership; especially, when the failing partner had, with the knowledge of the assignee, transferred his interest therein to his co-partner in order that it might be applied to the firm debts.

If the partners had the right to dispose of the firm assets to pay the firm debts, and this was done in good faith, it follows that the court did not err in refusing to give judgment against the assignee and his sureties or against the City Bank of Sherman. But the court erred in rendering judgment against appellee J. W. Simpson for the value of one-half the cotton, and his cross-assignment to that effect is sustained.

3. Under the seventh assignment by appellants it is complained that the court erred in its judgment in allowing on the note of the City Bank of Sherman against Fuller interest and attorney's fees, because the note was not due. Whether due or not at the time, it was drawn into litigation by appellants. A question might be raised by the secured creditors or the assignee; but under the answer of the garnishee, showing the amount of the assets and secured claims, and the verdict and judgment, it does not appear that there will be sufficient assets to pay the accepting creditors; so that, under the judgment to be rendered under our views as expressed above, appellants will have no interest in the question.

4. Under the third cross-assignment by the assignee, he complains that the court refused to allow him a fee for answering the writ of garnishment in this case. We think the court should have allowed the fee asked for in the pleading of the garnishee, which was $50. The verdict of the jury found that $100 was a reasonablee fee; but as the garnishee only asked for $50, we think this should be allowed.

5. The fourth cross-assignment by the assignee complains that any costs were adjudged against him. The assignment is well taken, as it appears the assignee did his full duty and was not liable for any costs.

That portion of the judgment of the court below which holds that the one-half interest of J. F. Fuller in the 150 bales of cotton passed to J. R. McMahan under the deed of assignment, and allows a recovery by the assignee against J. W. Simpson for $3141.57, with interest and costs, is reversed; and judgment is here rendered in favor of J. W. Simpson, that he go hence without day and recover of plaintiffs below and J. R. McMahan, assignee, all costs incurred by him in this court and the court below.

All that portion of the judgment of the court below which allows said plaintiffs to recover or to participate in any part of the money recovered for said cotton, and to recover costs against J. W. Simpson and J. F. Fuller, is reversed; and judgment is here rendered in favor of

all the defendants (not including J. F. and Lizzie Fuller, who are defendants to the bank's cross-bill) against said plaintiffs for all costs in this court and in the court below. The garnishee, J. R. McMahan, is allowed $50 for answering said writ of garnishment, for which judgment shall be rendered in his favor against the plaintiffs in said garnishments.

All that portion of the judgment of the court below which provides that the assignee shall pay out of the sum of $2156.75 now on hand, first, the expenses of the assignment, including attorney's fees, and then the claims which have accepted under the assignment in proportion to the amount of each claim; and providing that plaintiffs take nothing by their suit against W. D. Fuller, W. R. Jackson, G. B. R. Smith, D. B. Harrell, G. T. Duke and B. H. Zauk, and that they recover their costs against plaintiffs, and that the builder's lien on lot 19, block 3 in the village of Howe is declared invalid, and that J. F. Fuller and Lizzie Fuller recover their costs against the City Bank of Sherman in their cross-action, and that the acceptance of said City Bank of Sherman and B. H. Zauk take precedence of the garnishments of plaintiffs in so far as the fund on hand is to be paid out, is hereby reformed, so that the said plaintiffs shall take nothing by their suit against any of said parties, and that judgment be rendered in favor of all the defendants (except J. F. and Lizzie Fuller) against said plaintiffs for all costs by them in this behalf incurred, both in this court and in the court below; and as reformed, said portion of said judgment is hereby affirmed.

Writ of error refused.                              *Reformed and affirmed.*