CALIFORNIA STATE LIFE INS. CO. v. KRING. (No. 1367.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 30, 1918. Dissenting Opinion, Nov. 20, 1918. On Motion for Rehearing, Jan. 8, 1919. On Second Motion for Rehearing, Feb. 5, 1919.)

1. INSURANCE ⬤⟿676 — INSURANCE COMPANY —ACQUISITION OF OTHER'S ASSETS AND LIABILITIES—STATUTE.

Petition, in life insurance company's suit on premium note acquired by having taken over all assets and liabilities of another company, held not demurrable as showing that transaction whereby note was acquired was not authorized by Rev. St. 1911, art. 4737, providing any life insurance company may reinsure, therefore repugnant to anti-trust statutes, articles 7797, 7807.

2. MONOPOLIES ⬤⟿23—ACQUISITION IN VIOLATION OF LAW.

If transaction, whereby one life insurance company acquired assets and liabilities, including premium notes, of another, illegal as in violation of the anti-trust statutes (Rev. St. 1911, arts. 7797, 7807), was executed, title to premium note passed, so that acquiring company could enforce it against maker.

Hall, J., dissenting.

3. CONTRACTS ⬤⟿141(1)—PRESUMPTION OF LEGALITY.

Unless the facts alleged clearly show that a contract was unlawful, it will be presumed that it did not violate the law. (Per Boyce, J.)

4. EVIDENCE ⬤⟿88 — PRESUMPTION OF CONTINUATION OF STATUS—INNOCENCE.

The presumption of continuation of a status is weaker than the presumption of innocence in making a contract which might possibly be construed as illegal. (Per Boyce, J.)

5. BILLS AND NOTES ⬤⟿467(2) — ACTION — PLEADING.

Under Rev. St. 1911, art. 582, providing assignee may sue in his own name, in an action on an assigned note, it was not necessary that the pleader state in detail the circumstances of the transfer of the note, though it was not indorsed. (Per Boyce, J.)

6. CONTRACTS ⬤⟿136—ILLEGALITY—STATUTE —"VOID."

Though "void" involves the idea of utter ineffectiveness, in Rev. St. 1911, art. 7807, providing any contract violative of anti-trust statutes shall be absolutely void, term was used to describe usual legal effect of an unlawful contract, which is that when executed resulting titles will not be disturbed. (Per Boyce, J.)

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Void.]

On Motion for Rehearing.

7. PLEADING ⬤⟿34(3)—DEMURRER—PRESUMPTION.

Every reasonable presumption in favor of sufficiency of petition should be indulged on general demurrer.

8. INSURANCE ⬤⟿676—"REINSURANCE."

The common acceptation of the term "reinsurance" is to assume the obligation imposed by a policy of insurance.

Hall, J., dissenting.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reinsurance.]

On Second Motion for Rehearing.

9. JUDGES ⬤⟿45—COURT OF CIVIL APPEALS— DISQUALIFICATION OF CHIEF JUSTICE — INTEREST.

In insurance company's suit on premium note assigned to it by another insurance company, Chief Justice of Court of Civil Appeals, holder of policies in assignor company, and whose son-in-law was its vice president and acting manager, and had discussed the transaction in his presence, was disqualified to sit in the case.

Appeal from Potter County Court; T. W. McBride, Judge.

Suit by the California State Life Insurance Company against J. D. Kring. From judgment dismissing the cause, plaintiff appeals. Reversed and remanded.

Madden, Trulove, Ryburn & Pipkin and T. H. Cody, all of Amarillo, for appellant.

Kimbrough, Underwood & Jackson, of Amarillo, for appellee.

ROLLINS, Special Chief Justice. The appellant filed its suit in the county court of Potter county, Tex., to recover on a promissory note, executed by the appellee and payable to the Amarillo National Life Insurance Company. The appellant alleged that it was a corporation, incorporated under the laws of the state of California, with a per-

mit to do business in Texas, and that the Amarillo National Life Insurance Company is a corporation, incorporated under the laws of the state of Texas. On the 19th day of October, 1913, the appellee executed his promissory note, payable to the Amarillo National Life Insurance Company, for the amount of the premium due on the policy issued by the Amarillo National Life Insurance Company. The appellant alleges that—

After the execution of the note sued on, "the California Life Insurance Company took over all of the assets and liabilities of said the Amarillo National Life Insurance Company, and became the legal owner and holder of the note above described, having assumed the obligations imposed by all policies of insurance issued by said the Amarillo National Life Insurance Company, including the defendant's policy, and having purchased and become the legal owner and holder of all premium notes due on such policy, and having the right by reason of such purchase to collect premiums due on such policies of insurance, including the defendant's policy of insurance and the premium thereon due as here sued for, plaintiff becoming the owner of said note above set forth by reason of said purchase on or about the 18th day of March, A. D. 1916."

The appellant, by supplemental petition, alleged that—

"About the 18th day of March, A. D. 1916, the plaintiff, by purchase, took over the Amarillo National Life Insurance Company's life insurance business with all its assets and liabilities pertaining to such insurance business, assuming liability on its existing policies of insurance and having transferred to it all notes and choses in action of said Texas corporation pertaining to said insurance business, among which was the note of the defendant herein sued upon. That such contract of sale of said Amarillo National Life Insurance Company to the California State Life Insurance Company was in all things according to law, and such contract was approved by the department of insurance and banking of the state of Texas."

The trial court sustained a general demurrer, and, the appellant refusing to amend, the cause was dismissed, from which judgment the appellant has appealed to this court.

Article 7797, Rev. St. 1911, provides as follows:

"A monopoly is a combination or consolidation of two or more corporations when effected in either of the following methods: (1) * * * (2) Where any corporation acquires the shares or certificates of stock or bonds, franchise or other rights, or the physical properties, or any part thereof, of any other corporation or corporations, for the purpose of preventing or lessening, or where the effect of such acquisition tends to affect or lessen competition, whether such acquisition is accomplished directly or through the instrumentality of trustees, or otherwise."

Article 7807, Rev. St. 1911, provides as follows:

"Any contract or agreement in violation of the provision of this chapter shall be absolutely void and not enforceable either in law or equity."

Article 4737, Rev. St. 1911, provides as follows:

"Any life insurance company, organized under the laws of this state, may reinsure in any insurance company authorized to transact business in this state, any risk or part of a risk which it may assume; provided, that no such company shall have the power to so reinsure its entire outstanding business until the contract therefor shall be submitted to the commissioner of insurance and banking, and be by him approved, as protecting fully the interest of all the policy holders."

[1] The allegation that the appellant "took over all the assets and liabilities of the Amarillo National Life Insurance Company" does not necessarily mean that the transaction was not authorized by the provisions of article 4737 of the Revised Statutes. All of the assets and liabilities of the Amarillo National Life Insurance Company may have been represented by the outstanding policies of insurance and the premium notes unpaid. If this was true, the transaction was not repugnant to the provisions of the anti-trust statutes above quoted.

[2] The allegations of the appellant are susceptible of the construction that the transaction pleaded had been fully executed by the voluntary act of the parties. If the transaction was an executed one, the authorities seem to hold the title to the note in question passed to the appellant. The rule is stated in 13 C. J. p. 511, § 467:

"That property has been acquired in violation of some law does not rob it of its character as property nor prevent it from becoming the subject of legitimate contract which may be enforced in courts of law."

In the case of Wegner v. Biering, 65 Tex. 511, the rule is stated that—

"When the contract has been executed without the aid of courts by the voluntary acts of the parties, the profit or estate realized is not contaminated."

We are of the opinion that the pleadings of the appellant are not subject to general demurrer, and therefore reverse and remand the cause that the matters in controversy may be tried out.

HUFF, C. J., disqualified.
HALL, J., dissents.

BOYCE, J. (concurring). [3-5] The statute under consideration makes illegal the purchase of the property of one corporation by another only when the acquisition is "for the purpose of preventing or lessening or where the effect of such acquisition tends to affect or lessen competition." The first question, then,

Is whether the allegations of plaintiff's petition show that such was the purpose or effect of the transaction set out therein. The presumption of innocence would apply, and, unless the facts stated clearly show that the transaction was unlawful, it will be presumed that the contract did not violate the law. Williams v. Talbot, 27 Tex. 159; Tucker v. Streetman, 38 Tex. 71; Yates v. Houston, 3 Tex. 433. The extent to which the allegations of this petition go, in addition to the allegation of the fact of the sale, is that, at the time of the purchase of the assets of the Amarillo Company by the California Company, the Amarillo Company "had full charter powers of conducting the business of a life insurance company, in soliciting insurance," etc., and that the California Company was at that time engaged in such business in Texas. The petition alleged that, at the time of the execution of the note in 1912, the Amarillo Company was engaged in the life insurance business in Texas, and the sale of the note was made in March, 1916, so that there is no direct allegation that the Amarillo Company was actually engaged in business in 1916. The presumption of a continuation of a status is weaker than the presumption of innocence. Authorities above cited. Even if the petition sufficiently shows that the Amarillo Company was engaged in business at the time of the sale, there is no showing that but for the sale it would have continued in business and been a competitor with the California Company. It is possible that the Amarillo Company was already in process of liquidation, or that its stockholders had already, and independent of any sale to the California Company, decided to discontinue business. The company did not have to remain in business during the full term of its charter; in fact, its permit to continue in business only extends and is granted from year to year upon a satisfactory showing of its business to the commissioner of insurance. Rev. St. art. 4730. The Amarillo Company, with the consent of the insurance commissioner, might reinsure all its risks. Rev. St. art. 4737. And so far as we are informed by the petition, the stockholders of the Amarillo Company may have, prior to the sale to the California Company, decided to do this and retire from further business. The approval by the commissioner of insurance of this contract of sale suggests the probability of this condition. If this was the case, the purpose and effect of the sale was not to prevent or lessen competition. Other circumstances might possibly be stated from which the same conclusion might be drawn. It was not necessary that the pleader state in detail the circumstances of the transfer of the note, though it was not indorsed. Rev. St. art. 582; Lewis v. Bank, 204 S. W. 889; O'Connell v. Rugely, 48 Tex. Civ. App. 456, 107 S. W. 152; Word v. Elwood, 90 Tex. 130,

37 S. W. 414; Ford v. Johnston, 184 S. W. 303. Since some of the details were stated, I take it that, if they show that the plaintiff had no title to the note, the demurrer was properly sustained. However, all the facts stated may be true, and yet, under certain supposable circumstances just referred to, the contract would not have been unlawful. I think the presumption in favor of the legality of the contract should prevail.

But I am of the opinion that the demurrer was improperly sustained, even if the allegations of the petition had brought the contract of sale within the terms of Rev. St. art. 7797. Of course, under such circumstances, if the suit were brought to enforce the contract of sale, its invalidity would be a sufficient defense; but the contract itself has been consummated and furnishes only the basis of plaintiff's title to the note. Let us first consider this phase of the question, independent of any effect that the provision of the statute, which makes contracts in violation of the act "absolutely void and not enforceable," might have on it. The authorities, I think, amply sustain the proposition that where a contract, in violation of law or against public policy, has been fully executed, the courts will recognize and protect the rights and titles resulting from the execution of the contract. As between the parties themselves, when an illegal contract has been executed in whole or in part, the maxim, "Ex turpi causa non oritur actio, in pari delicto melior est conditio possidentis" (Pomeroy, Equity Jurisprudence [2d Ed.] § 939), applies. The condition of the possessor referred to in the maxim "is clearly the condition of the parties with respect to their property rights created by or resulting from the contract. If the contract is still executory, the promisor is left undisturbed in possession of the money or other property which he agreed to pay or transfer. If the contract has been executed, the promisee is left undisturbed in the possession of the money or other property which has been conveyed to him." Pomeroy, § 939. If in such executed contracts the other party to the unlawful contract cannot question the title to property conveyed in execution thereof, why should some third person who has no title to the property himself, and whose only interest in the matter is in the question of title, be permitted to do so? The following Texas authorities support the proposition first above announced:

In Wegner v. Biering, 65 Tex. 511, the court says:

"When the contract has been executed without the aid of the courts by the voluntary acts of the parties, the profit of estate realized is not contaminated."

See, also, quotations to same effect from the Planters' Bank Case (16 Wall. 483, 21 L. Ed. 473), and Sharpe v. Taylor, quoted with ap-

proval in De Leon v. Trevino, 49 Tex. 93, 94, 30 Am. Rep. 101.

In Patty-Joiner Co. v. City Bank, 15 Tex. Civ. App. 475, 41 S. W. 177, writ of error denied, the court approves the following proposition of law:

"The distinction between enforcing illegal contracts or contracts void as against public policy, and asserting title to property or money which has arisen from them, is clearly and distinctly drawn."

In the Northern Securities Cases (Harriman v. Northern Securities Co.) 197 U. S. 297, 25 Sup. Ct. 493, 49 L. Ed. 763, and (Northern Securities Co. v. United States) 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679, where stocks in the competing lines of railway referred to in the opinion had been conveyed to said Northern Securities corporation, and the transaction was held illegal because a trust was thereby created in violation of the federal Anti-Trust Act, which declared every contract and combination falling within its provisions to be illegal, it was recognized on this principle that the title to the stocks conveyed was vested in the Securities Company, and the parties conveying the stock would not be permitted to recover it. The transaction was held illegal, but the assets of the corporation were ordered distributed in the same manner as if the acquisition of the stocks had been legal. In short, the title acquired in the illegal transaction was recognized. The conclusion of the court is summed up in this language:

"In fine, the title to these stocks having intentionally been passed, the former owners or part of them cannot reclaim the specific shares and must be content with their ratable proportion of the corporate assets."

The cause of action in this case is on the note, which has no connection with the illegal contract. The title to this note is either in the Amarillo Company or the California Company. If, as between these two, it is in the California Company, the defendant cannot question such result unless this conclusion is affected by the terms of the statute which expressly make such contracts "absolutely void and not enforceable."

[6] I do not deny that in one sense, and perhaps in the strictest and most accurate conception thereof, the word "void" involves the idea of utter ineffectiveness in all situations and for all purposes, leaving the effect of the void transaction the same as if it had not taken place. Nor that the use of the word "absolutely" in connection does not lend strength to the contention that it was in this sense that the word was used in this statute. But the word "void" is very frequently used in legal phraseology to describe the effect of a stated set of circumstances in a sense that does not comprehend this utter nullity. In fact, the authorities assert that it is "seldom, unless in a very clear case, to be regarded as implying a complete nullity; but it is, in a legal sense, subject to large qualifications, in view of all the circumstances calling for its application and the rights and interests to be affected in a given case." Wiener v. Zweib, 105 Tex. 262, 141 S. W. 777, 147 S. W. 867; Bouvier's Law Dictionary; Words and Phrases, First and Second Series. It has been held in a number of cases that the term "utterly void," as used in legislative enactments under consideration, did not imply utter futility as between all parties under all circumstances. Burgett v. Burgett, 1 Ohio, 469, 13 Am. Dec. 634; Anderson v. Roberts, 18 Johns. (N. Y.) 526, 9 Am. Dec. 235; Fox v. Willis, 1 Mich. 325. Contracts in violation of law and those against public policy are universally described by legal authorities as being "void," "wholly void," etc., and this is true whether the statute prohibiting an act expressly so declares or not. 13 C. J. 351; 9 Cyc. p. 465. Such contracts are more than voidable; they cannot be ratified, for the contract of ratification would be subject to the same vice; and whenever they are attempted to be enforced the court will refuse its aid to that purpose; but as we have already seen, when such contracts have been executed, the titles resulting will not be disturbed, though the contracts have been denominated as being void. So that, even if the word "void" be not strictly accurate as describing the effect of such contracts, it has by long usage come to be recognized as proper in this connection, and its meaning in such connection is well understood. When therefore the Legislature declared that contracts under consideration in violation of the terms of the statutes were "absolutely void and unenforceable," I think it is a fair conclusion to say that the expression was simply used in the sense that it was customary for legal authorities to use such terms in connection with the description of the effect of an unlawful contract. If we were to apply the strictest sense of the term here, no rights or titles to real or personal property, even of innocent third persons, could come through such an executed contract and be upheld by the courts. There could be no security in property rights or titles where the chain of title may have passed from one corporation to another. I cannot believe that the Legislature intended that the enactment should have such a far-reaching and disturbing effect.

While the suit here is by one of the parties to the alleged illegal contract, the suit is not to enforce that contract; it has been executed by the parties themselves. The title to the note alone is involved, and that has been by the acts of the parties vested in the California Company.

HALL, J. (dissenting). I regret my inability to agree with the majority in the disposition made of this appeal. The primary question presented is whether or not the court erred in sustaining the general demurrer to the plaintiff's cause of action, as set out in its original and first supplemental petitions. Appellant, plaintiff in the court below, instituted a suit to recover of appellee upon a note for $485.90, executed to the Amarillo National Life Insurance Company. The note is as follows:

"485.90.·    Sandia, Tex., October 19, 1913.

"On or before the 19th day of July, 1914, without grace, I promise to pay to the order of the Amarillo National Life Insurance Company, at its office in Amarillo, Texas, the sum of four hundred eighty-five and $90/100$ dollars, with interest thereon from date until paid, at the rate of five per centum per annum. This note is given on account of the premium due October 19, 1913, on said company's policy No. 3368, insuring my life and if it shall not be paid in full at its maturity all insurance under said policy shall cease and determine ipso facto and immediately, save as therein otherwise provided. In such event this note shall cease to be binding except for the amount of the premium unpaid and unearned at the date of default, together with interest thereon; but for that amount and interest it shall remain a valid obligation.    [Signed]  J. D. Kring."

Plaintiff's original petition alleges:

That it is a corporation, having its principal office and place of business in Sacramento, Cal., but has a permit to do business in this state and is lawfully doing business in Texas, maintaining an office and place of business in Amarillo, Potter county, Tex. "That heretofore, to wit, on or about the 19th day of October, 1912, the Amarillo National Life Insurance Company, a corporation, having its principal office and place of business at Amarillo, Potter county, Tex., duly organized and chartered and doing business under the laws of the state of Texas, was in the business of insuring the lives of individuals in said state, receiving premiums therefor on the policies of insurance so issued by it."

The pleading then sets out the issuance of a policy to appellee, giving the amount, and alleges the execution of a premium note, in the sum of $485.90; that on the 19th day of October, 1913, the second annual premium being due, the note above set out was executed and delivered to the Amarillo National Life Insurance Company, and continues as follows:

"That thereafter the plaintiff herein, the California State Life Insurance Company, took over the assets and liabilities of the said the Amarillo National Life Insurance Company, and became the legal owner and holder of the note above described, having assumed the obligations imposed by all policies of insurance issued by the Amarillo National Life Insurance Company," etc.

The petition further alleges that plaintiff is the owner of the note sued on by reason of the fact that it purchased the same from the Amarillo National Life Insurance Company. By appropriate allegations it is shown that $364.42 of said note, with interest thereon, from October 19, 1913, was earned premium at the time of the filing of the suit; that said amount is long since past due, and defendant, though often requested, has wholly failed to pay the same. By supplemental petition appellant alleges, in part, as follows:

"For special answer, if required, to the allegations in said first amended original answer, plaintiff admits that the Amarillo National Life Insurance Company was a corporation, duly organized and existing by virtue of the laws of the state of Texas, wih its principal office and place of business in Potter county, Tex., and that at the times complained of had full charter powers of conducting the business of a life insurance company, in soliciting insurance on the lives of individuals, and of collecting premiums on such of its policies as were issued; that the California State Life Insurance Company is a foreign corporation, organized and existing under and by virtue of the laws of the state of California, with a permit to do business in Texas, and that it had such permit to do business in Texas prior to the sale of the Amarillo National Life Insurance Company to it, but plaintiff alleges that, at the time of such purchase of said Amarillo National Life Insurance Company by it, it had few, if any, policies of insurance in force in the state of Texas, having only one agent in the state, and that such policies as had been issued by it and as were in force and effect had virtually all expired at the time of the purchase of said Texas corporation; that about the 18th day of March, A. D. 1916, the plaintiff, by purchase, took over the Amarillo National Life Insurance Company's life insurance business, with all its assets and liabilities pertaining to such insurance business, assuming liability on its existing policies of insurance and having transferred to it all notes and choses in action of said Texas corporation pertaining to said insurance business, among which was the note of the defendant herein sued upon; that such contract of sale of the said the Amarillo National Life Insurance Company was in all things according to law, and such contract was approved by the department of insurance and banking of the state of Texas; and plaintiff alleges the fact to be that the policy of insurance as issued to defendant was in all things according to the charter rights and powers of said the Amarillo National Life Insurance Company, in accordance with its life insurance business," etc.

The note above set out was payable to the order of the Amarillo National Life Insurance Company, and bore no indorsements whatever.

Article 7797, Vernon's Sayles' Civil Statutes, defining a "monopoly," is:

"A monopoly is a combination or consolidation of two or more corporations when effected in either of the following methods: (1) * * * (2) Where any corporation acquires the shares or certificates of stock or bonds, franchise or other rights, or the physical properties, or any part thereof, of any other corporation or cor-

porations, for the purpose of preventing or lessening, or where the effect of such acquisition tends to affect or lessen competition, whether such acquisition is accomplished directly or through the instrumentality of trustees or otherwise."

Article 7807, Id., provides:

"Any contract or agreement in violation of the provisions of this chapter shall be absolutely void and not enforceable either in law or equity."

The allegations in appellant's pleadings, as I understand them, leave no room for doubt as to the nature of the transaction through which appellant acquired the note. I am unable to find the faintest hint that it was a reinsurance undertaking. The allegations are:

"That thereafter the plaintiff herein, the California State Life Insurance Company, took over all the assets and liabilities of the said the Amarillo National Life Insurance Company; * * * that plaintiff is the owner of the note sued on by reason of the fact that it purchased the same from the Amarillo National Life Insurance Company; * * * that it had such permit to do business in Texas prior to the sale of the Amarillo National Life Insurance Company to it, but plaintiff alleges that at the time of such purchases of said Amarillo National Life Insurance Company by it," etc.

There is this further specific allegation:

"That about the 18th day of March, A. D. 1916, plaintiff, by purchase, took over the Amarillo National Life Insurance Company's life insurance business, with all its assets and liabilities pertaining to such insurance business," etc.

These statements, in my opinion, show simply a sale upon the one part and a purchase upon the other, and I am unable to find the word reinsurance or any synonym of it anywhere in the pleading. If I am correct in this construction, then article 7797, supra, has been violated, and it requires no argument to show that the effect of such a sale tends to affect competition. The unavoidable conclusion is that, when the Amarillo National Life Insurance Company sold all of its life insurance business, it, by virtue of that fact, was at an end. Appellant having acquired the note in virtue of a contract clearly within and inhibited by the statute, it is, in the language of the statute, "absolutely void and not enforceable, either in law or equity." Article 7807, supra; Langford et al. v. Powell et al., 196 S. W. 662. Having sued as the legal owner and holder of the note under an assignment from another corporation, in violation of the statute appellant is not entitled to recover in the capacity of owner, and this defect may be raised by general demurrer. Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 750, 35 L. R. A. 241. The note being payable to the

order of the Amarillo National Life Insurance Company, and bearing no indorsement of the payee, and being otherwise nonnegotiable (by reason of its provision as to unearned premium), before appellant can recover it must both allege and prove the assignment to show its ownership. Ross v. Smith, 19 Tex. 171, 70 Am. Dec. 327; Merrill v. Smith, 22 Tex. 53; Ball v. Hill, 38 Tex. 241. In order to prove ownership, appellant must, of course, show the illegal transaction set out in its pleadings and through which it acquired title to the note. The test whether a cause of action, connected with an illegal transaction, can be enforced at law, is whether the plaintiff requires any aid from the illegal transaction to maintain his case. Read v. Smith, 60 Tex. 382; Wiggins v. Bisso, 92 Tex. 219, 47 S. W. 637, 71 Am. St. Rep. 837; Oliphant v. Markham, 79 Tex. 543, 15 S. W. 569, 23 Am. St. Rep. 363. It is true that the appellee in his relation to the contract of sale, by which appellant purchased the Amarillo National Life Insurance Company, is a third party.

"The defense of illegality, although open to the parties and those claiming under them, cannot as a rule be invoked by third persons. This rule is, of course, subject to an exception, where it is attempted to assert rights based on a contract where the illegality of the contract appears from the plaintiff's own showing or where the interests of the person asserting the invalidity are affected." 13 C. J. 508, § 458.

Since the statute expressly declares contracts of the character shown in the plaintiff's pleadings to be absolutely void, and since in order to recover as the assignee of the note appellant must assert ownership under the contract, the writer thinks the case comes within that class which may be attacked by third parties. Cumberland Tel. & Tel. Co. v. City of Evansville (C. C.) 127 Fed. 196. The absolute ownership of the note being still in the Amarillo National Life Insurance Company, appellee could insist that no one but the owner be permitted to collect it from him. Until appellant shows its legal right to recover by its pleading, a general demurrer should be sustained. 8 C. J. 885, § 1157; Colbertson v. Beeson, 30 Tex. 76; Drinkall v. Movius State Bank, 11 N. D. 10, 88 N. W. 724, 57 L. R. A. 341, 95 Am. St. Rep. 693.

Special Chief Justice ROLLINS quotes from 13 C. J. 511, § 467, as follows:

"That property has been acquired in violation of some law does not rob it of its character as such, nor prevent its becoming the subject of legitimate contracts which may be enforced in courts of law."

The language quoted is a part of the syllabus of Wayman Investment Co. v. Wessinger & Wagner, 13 Cal. App. 108, 108 Pac. 1023. That is a case where the lessee of a building

which had been erected in violation of an ordinance establishing fire limits, and making the act of its erection punishable by fine, sought to have his lease contract declared void and escape the payment of rent because the consideration of the contract was illegal. There was a judgment for the lessor in the trial court, and the California Court of Appeals, in affirming the judgment, said:

"Although there may be some illegal features indirectly connected with a transaction involved in a suit, yet the plaintiff may recover if his cause of action is otherwise legitimate, and he can make out his case without calling to his aid the illegal agreement. The test of whether the demand can be enforced at law is whether the plaintiff requires the aid of the illegal contract to establish his case."

That case is authority in this only in the announcement of the above rule. Since it is not necessary for the lessor, in order to recover the rent, to prove any fact or circumstance with regard to the erection of his building, as a whole the case has no application here. The writer has no quarrel with the rule of law quoted by Special Chief Justice ROLLINS. Although the lessor in that case had, in violation of the fire ordinance, erected a wooden or prohibited building on his lot, it was nevertheless his property as against the world, and there was no statute declaring, as in the instant case, that the contract was "absolutely void and not enforceable, either in law or equity." Nor is the rule quoted from the case of Wegner Bros. v. Biering, 65 Tex. 506, by both of my Brethren, to the effect that, "when the contract has been executed without the aid of the courts by the voluntary act of the parties, the profit or the estate realized is not contaminated," applicable. Admitting that the note itself upon which the suit is based herein is not contaminated, as will be hereinafter discussed, appellant cannot recover upon it because he did not acquire it legally, and, as shown by his pleadings, requires the aid of such illegal contract to establish his case. My contention is that when a statute denounces a contract as absolutely void, declares it to be unenforceable in the courts, and makes the entering into such a contract a crime providing a penalty, it cannot become an executed contract as a matter of law; and when, in addition to all of this, it falls clearly within that class of contracts held illegal as against public policy, it is void, and not merely voidable, as asserted by Associate Justice BOYCE. Reed v. Brewer, 90 Tex. 144, 37 S. W. 418.

"Where a statute expressly declares that certain kinds of contracts shall be void, there is then no doubt of the legislative intention and an agreement of the kind voided by statute is unlawful. The same is true where the contract is in violation of a statute, although not therein expressly declared to be void. It is immaterial whether the thing forbidden is malum in se or merely malum prohibitum." 13 C. J. 420, § 351.

The presumption of innocence, which Associate Justice BOYCE thinks should apply, in my opinion does not obtain here, and the holdings to that effect in the cases cited by him were under altogether different circumstances. In my opinion the presumption of innocence should not obtain when the accused has confessed his crime in writing; nor should the courts, in the face of such confession, endeavor to draw from it inferences of fact tending to show a possibility of innocence as against an unequivocal confession, setting up the details of his offense, such as we find in the appellant's pleadings. A culprit should not be permitted to urge a general plea of not guilty and call upon the courts to imagine the existence of facts not set out in his statement and contrary thereto which, if true, would possibly acquit him; nor should he be permitted to retain and enjoy the fruits of his contract illegally obtained, simply because he was not caught in the act and was not challenged until he had the goods safely in hand and was in a position where he could claim that the contract was an executed one. This would be placing a premium on alertness and agility in lawbreaking.

As between the two insurance companies, the contract may in one sense be considered as executed, but judicial aid should not be extended either party in the enforcement of any alleged rights acquired under it, especially when the plaintiff must depend upon the illegal contract as one necessary ground of recovery. Both the statute and consideration of public policy demand this of the courts. McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117; Gray v. Oxnard Bros. Co., 59 Hun, 387, 13 N. Y. Supp. 86. The tendency under the contract between the insurance companies would unquestionably be toward the creation of a monopoly and combine. A recovery upon the note is one step toward the consummation of this illegal design. Denial of relief in the case will discourage the formation of such contracts and tend strongly toward reducing the number of such transactions to a minimum." Brent v. Gay, 149 Ky. 615, 149 S. W. 915, 41 L. R. A. (N. S.) 1034; Continental Wall Paper Co. v. Voight & Sons, 148 Fed. 939, 78 C. C. A. 567, 19 L. R. A. (N. S.) 143; Id., 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486. In my opinion, the Northern Securities Cases, 197 U. S. 297, 25 Sup. Ct. 493, 49 L. Ed. 763, and 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679, relied upon and cited by Judge BOYCE, is not authority here. The general principle that in suits upon fraudulent contracts the court will grant relief to neither party, but will leave them in the condition in

which it finds them, evidently controlled the disposition of that case, and the effect of the opinion, denying the plaintiff the right to recover the certificates of stock, was in line with that principle. By reason of the fact that the Texas anti-trust statute declares a contract under which appellant acquired the note to be absolutely void, appellant is not the owner in any sense of the note. The statute is an absolute bar to such ownership, and, since the facts set up in its pleadings show that it is not the owner, the court did not err in sustaining the demurrer. The weight of authority is that, if money or property other than choses in action is the consideration for such an illegal contract, such property cannot be recovered if the contract is fully executed, because the court will leave the parties in the position in which it finds them. Reed v. Brewer, supra; Hall v. Edwards, 194 S. W. 674, 678; Beer v. Landman, 88 Tex. 450, 31 S. W. 805. To permit one party to an illegal contract to recover upon a note executed by a third party, and the possession of which passed by the contract, is simply judicial recognition of the contract and enforcing rights acquired under it. The position of the parties should not be changed. I admit that, if the note was indorsed by the Amarillo National Life Insurance Company, possession by appellant would be prima facie evidence of ownership and it would not "require the aid of the illegal contract to establish its case." I also admit, as stated by Judge BOYCE, that it was not necessary for the pleader to state in detail the circumstances of the transfer of the note, but in this case the circumstances are stated. Being merely the assignee of a nonnegotiable instrument it would have been sufficient if appellant had alleged that it was such assignee, in which event the demurrer would not lie, but when the pleadings set out in detail the circumstances of the transfer, and it appeared therefrom that the note was acquired illegally, the demurrer was properly sustained.

Entertaining the views above expressed, I respectfully dissent from the majority holding and insist that the judgment should be affirmed.

### On Motion for Rehearing.

ROLLINS, Special Chief Justice. [7] The appellee insists that the majority of the court is in error in holding the appellant's petition sufficient as against a general demurrer. In writing the original opinion we assumed that all parties would agree that every reasonable presumption in favor of the sufficiency of the pleading should be indulged. Therefore no discussion of that proposition was had. This court, in Roberts v. Anthony, 185 S. W. 423, speaking through Judge Hall, held that "every reasonable intendment must be presumed in favor of the sufficiency" of the pleadings as against a general demurrer. That is the holding of an unbroken line of decisions.

[8] In the dissenting opinion, it is stated: "I am unable to find the word reinsurance, or any synonym of it, in the pleading." The common acceptation of the term "reinsurance" is to assume the obligation imposed by a policy of insurance. The pleader alleged that the California Company assumed the obligation imposed by all policies of insurance issued by the Amarillo Company. This court has held that the presumption of legality must be indulged. Jackson v. Greenville Compress Co., 202 S. W. 324. Appellant alleged that the commissioner of insurance and banking had approved the contract. There was no occasion to present the contract to the commissioner for approval, except it be a contract for the reinsurance of all of the business of the Amarillo Company. The only legal way the insurance business of the Amarillo Company could be taken over by the California Company was by a reinsurance contract. The conclusion, it seems, naturally follows that the contract alleged was one for the reinsurance of the business of the Amarillo Company. At least, it is not an unreasonable inference. In any event, the rights of litigants ought not to be made depend upon the happy or precise use of words either in the expression or suppression of facts.

Counsel for appellee contend that it was the duty of the appellant to plead any special circumstances which relieved the transaction of illegality, and that it is not proper for the court to conjecture that such circumstances exist. The court does not undertake such task. Appellee urged a general demurrer. The transaction must be presumed legal unless the contrary conclusively appears. Every reasonable intendment in favor of the sufficiency of the petition must be indulged. A reinsurance contract would have been legal. It does not conclusively appear that the transaction alleged was not a reinsurance contract. It necessarily follows that this court should indulge the presumption of the legality of the transaction and the sufficiency of the pleading, rather than to conjecture that the "appellant had made the best statement of its cause of action that it could make, and that there were no special circumstances which it could truthfully plead that would relieve the transaction and contract between appellant and the Amarillo National Life Insurance Company of its apparent illegality."

The Supreme Court of this state has held that a county commissioner's court and a broker contracting with it are presumed to know the law and intended to obey it. Foard County v. Sandifer, 151 S. W. 523. It has also been held that the sale of prop-

erty of a public service corporation was made under the statutes authorizing such sale unless the contrary affirmatively appears. Gulf, etc., Co. v. Lasater, 193 S. W. 773. It does not therefore seem an unreasonable stretch of the rule to hold that the commissioner of insurance and banking did not act in a matter in which he was not authorized to act or that, in acting, he obeyed the law.

In the opinion of the writer the motion is without merit and is in all things overruled.

### On Second Motion for Rehearing.

HALL, J. [9] In its motion for rehearing appellant insists that Chief Justice HUFF, of this court, was not disqualified, and that Special Justice ROLLINS had no authority to act. The affidavit of Chief Justice HUFF filed herein, shows that he is the holder of policies of insurance on his life, issued by the Amarillo National Life Insurance Company, to the amount of $5,000, payable to his wife upon his death; that they provide for payment, under certain circumstances, in case of sickness or injury during his life; that the policies are now in force. He further shows that his son-in-law was vice president and acting manager of the Amarillo National Life Insurance Company at the time the transfer by that company to appellant was executed, and that, from having heard his son-in-law discuss the matter while visiting his home, he learned something of the transaction. The affidavit further states that he did not consult with or in any way advise his son-in-law, or any one connected with the matter, concerning it, and, having suggested these things to the Associate Justices of the court, we agreed that he was disqualified and should not sit in the case. Boynton Lumber Co. v. Houston Oil Co., 189 S. W. 749, 760.

The motion is in all things overruled.